18-525
Malave v. Weir

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of February, two thousand nineteen.

PRESENT:
            AMALYA L. KEARSE,
            DENNIS JACOBS,
            ROBERT D. SACK,
                    Circuit Judges.
_____

EDUARDO SHANE LUIS MALAVE,
JACQUELYNN MARIE GRUNERT,

        Plaintiffs-Appellants,

        -v.-                                                    18-525

KIMBERLY WEIR, (Warden) Individually
and in their Official Capacities,
OTERO-NEGRON, (Deputy Warden)
Individually and in their Official Capacities,
OUELLETTE, (Deputy Warden) Individually
and in their Official Capacities, GARJUILO
(Captain) Individually and in their Official
Capacities, ALEXANDER, (Lieutenant)

**Individually and in their Official Capacities.**

     <u>**Defendants-Appellees.**</u>

_____

FOR PLAINTIFFS-APPELLANTS:    Alan H. Bowie, Jr. (<u>with</u> Damian K. Gunningsmith, <u>on the brief</u>), Carmody Torrance Sandak & Hennessey LLP, New Haven, CT.

FOR DEFENDANTS-APPELLEES:    James W. Caley, Assistant Attorney General, <u>for</u> George Jepsen, Attorney General of the State of Connecticut, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The plaintiffs, Eduardo Shane Luis Malave and Jacquelynn Marie Grunert, bring claims against various prison officials under the First, Eighth, and Fourteenth Amendments, on the ground that Grunert was denied visitation with her husband, Malave, while he was serving a term of imprisonment in the Carl Robinson Correctional Institution. Plaintiffs appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, <u>J.</u>) dismissing their claims on the ground of qualified immunity. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The plaintiffs argue that the district court incorrectly defined the right at issue for the purposes of its qualified immunity analysis.

When a defendant invokes qualified immunity, courts consider whether the plaintiff has shown "(1) that the [defendant] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Wood v. Moss</u>, 572 U.S. 744, 757 (2014) (quoting

<u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" <u>Carroll v. Carman</u>, 135 S.Ct. 348, 350 (2014) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). "[C]ourts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue." <u>Golodner v. Berliner</u>, 770 F.3d 196, 205 (2d Cir. 2014). The definition must be "particularized in the sense that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id</u>. at 206 (internal quotation marks and alteration omitted).

The plaintiffs define the pertinent rights as the rights of a married prisoner and his or her spouse not to be permanently deprived of all visitation.[1] They allege that the deprivation of visitation was permanent because, when Warden Weir informed them that their visitation rights were terminated, she did not give a time when they would be reinstated. The warden ultimately reinstated full visitation rights. Plaintiffs argue nevertheless that the official action they challenge was the threat of a permanent deprivation of their visitation rights, and that the right must be defined commensurate to that threat.[2] The district court

---

[1] On September 15, 2015, after Malave was accused by prison informants of smuggling drugs into the prison during his visits with Grunert, Warden Weir removed Grunert from Malave's visitation list, and terminated Malave's telephone privileges with Grunert. Warden Weir reinstated the phone privileges between Grunert and Malave on March 28, 2016; reinstated non-contact visitation on May 24, 2016; and Acting Warden Ouellette restored Grunert to active visiting status on July 19, 2016. A total of ten months elapsed between the denial of visitation on September 15, 2015 and the restoration of Grunert's active visiting status on July 19, 2016. However, the district court calculated the total deprivation as eight months, because Malave had been deprived all visitation through November 2015 due to other disciplinary reports, which he does not challenge in this case.

[2] The plaintiffs suggest that Malave did not commit the contraband offense for which visitation was denied. But they do not challenge the denial on the ground that it was arbitrary or unsupported.

defined the right more narrowly, acknowledging that the deprivation lasted eight months for full-contact visitation (and less for telephonic and non-contact visitation), and was therefore not permanent.   The district court thus focused on the actual deprivation suffered by the plaintiffs, rather than on the threatened permanent deprivation.   The court properly "particularized" the right to match the harm that was actually suffered by the plaintiffs.   Golodner, 770 F.3d at 206.

Moreover, the letter sent to Grunert advising her that she had been removed from Malave's visitation list did not describe the removal as permanent or identify any time frame for deprivation.   In an affidavit submitted to the district court, Warden Weir described the removal only as "indefinite".   App'x 326.

One prong of the qualified immunity test is whether the right claimed by the plaintiffs was clearly established.   The plaintiffs incorrectly assert that the right to be free from permanent deprivation of visitation was clearly established by the Supreme Court in Overton v. Bazzetta, 539 U.S. 126 (2003).   However, Overton did not consider whether there is a First Amendment right to visitation in prison: "We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration . . . ."   Id. at 131-32.   Cases in this circuit also have not clearly established a right to spousal visitation in prison.   Plaintiffs cite a summary order, Mills v. Fischer, 497 F. App'x 114 (2d Cir. 2012), which merely "assume[d]" (without deciding) that "inmates and their families have a right to visitation protected by the First Amendment."   Id. at 116.   In any event, a summary order does not have precedential value and therefore does not create clearly established law.

Accordingly, the district court correctly defined the right at issue for the purposes of qualified immunity.[3]

---

[3] Because we agree with the district court that qualified immunity is appropriate, we need not address the district court's alternative basis for dismissing the procedural due process claims--that the State of Connecticut Department of Correction Administrative

4

We have considered the plaintiffs' remaining arguments and find them to be without merit.   For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

Directive 10.6 (governing visitation rights in prisons) did not establish a protected liberty interest.